**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GLORIA E. SWANSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.  12 C 8290 |
| v. | ) | |
| | ) | |
| BAKER & McKENZIE, LLP, a | ) | |
| limited liability partnership, | ) | |
| NANCY OFFDENKAMP, and | ) | |
| PATRICIA GRIFFIN, | ) | |
| | ) | |
| Defendants. | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

AMY J. ST. EVE, District Court Judge:

   *Pro se* Plaintiff Gloria E. Swanson ("Swanson") seeks redress from her former employer, Baker & McKenzie ("Baker"), and its agents Nancy Offdenkamp ("Offdenkamp") and Patricia Griffin ("Griffin") (collectively, "Defendants") for (1) retaliation, in violation of the Civil Rights Act of 1964, as amended in 1991, 42 U.S.C. § § 2000 *et seq.,* and 42 U.S.C. § 1981*,* stemming from a complaint of discrimination she made in 1995; and (2) defamation of Swanson's character resulting from allegedly false statements made by Baker over an unknown period of time.  (R. 1, Compl. ¶¶ 1-2.)  Defendants Baker and Offenkamp filed a motion to dismiss Ms. Swanson's Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim.  (R. 17, Mot.)  For the following reasons, the Court grants the motion to dismiss and dismisses Swanson's Complaint, without prejudice.

## BACKGROUND

Plaintiff Swanson alleges the following facts, which are deemed true for purposes of this motion.

Gloria Swanson worked as an Executive Legal Secretary at the Baker & McKenzie law firm for over five years, from February 2, 1990 through May 22, 1995. (Compl. ¶¶ 2, 7.) Ms. Swanson left Baker because she believed Baker had discriminated against her based on her race, and had forced her to leave her job after she complained about the verbal abuse she received from the attorney for whom she worked, Thomas Haderlein ("Haderlein"). (*Id.* ¶¶ 19-20.) Specifically, in May 1995, Ms. Swanson asked Baker's personnel department to re-assign her to a new attorney because of worsening abuse from Haderlein. (*Id.* ¶ 20.) Baker told Ms. Swanson that she could not transfer to another assignment because "there were no other positions at her salary." (*Id.* ¶ 22.) Ms. Swanson, therefore, resigned. (*Id.*)

Ms. Swanson compiled a list of disparities between how Baker treated white secretaries and how Baker treated her. (*Id.* ¶ 23.) Ms. Swanson presented this list to Maura Ann McBreen ("McBreen"), a Baker labor attorney, in June 1995. (*Id.* ¶ 23.) At some point in June, Baker offered Ms. Swanson a better termination and settlement offer than she originally received upon her resignation. (*Id.* ¶ 25.) Baker, therefore, signed the Baker Termination and Release in Full, dated June 19, 1995, releasing Baker of any liability for the discriminatory treatment Ms. Swanson allegedly received. (*Id.*)

After leaving Baker, Ms. Swanson obtained employment with another major Chicago law firm. (*Id.* ¶ 27.) Baker worked for that firm for fourteen years, until March 2011. (*Id.*) Ms. Swanson then began searching for a new job, but received no offers. "Swanson, who had always

been a top contender and candidate, could not understand why, after testing well, interviewing well and oftentimes being told that the choices for employment were down to Swanson and possibly one other candidate, suddenly at the 'reference stage' of the interview, testing and employment process, the prospective employers who had previously lauded Swanson's experience, skills and personality, suddenly went cold with no explanation for their sudden 'turn off'." (*Id*.)

Ms. Swanson hired a reference-checking company, Allison & Taylor ("A&T") to contact her references, including Baker, to determine if any reference was conveying information to prospective employers that might prevent them from hiring Swanson. (*Id*. ¶ 7.) On or about July 18, 2012, A&T informed Ms. Swanson that Baker's HR Manager, Patricia Griffin, stated that she could not find Swanson in Baker's records system. (*Id*.) Specifically, Ms. Griffin allegedly told A&T that "[the records] do not go back that far but she is not there based on name and social security number." (*Id*.) On July 19 and 23, 2012, Ms. Griffin again told A&T that she could not locate Ms. Swanson in Baker's system. (*Id*. ¶¶ 8-9.) Ms. Griffin stated that she would ask Ellie Nichol, a secretary who had worked at Baker for thirty-two years, if she remembered Swanson. (*Id*. ¶ 8.) On July 26, 2012, Nancy Offdenkamp, an employee in Baker's human resources department, returned a call to A&T and said, "I can't confirm she worked here or deny she worked here. . . it's been too long." (*Id*. ¶ 12.) On July 25, 2012, Ms. Offdenkamp left a voicemail for Ms. Swanson explaining that Baker was attempting to locate her employment information in a former payroll system which Baker had ceased using a few years prior. (*Id*. ¶ 16.) She also stated that the law requires Baker to maintain personnel records for seven years after any employee leaves the firm. (*Id*.) At the time of this call, over seventeen years had

3

passed since Ms. Swanson left Baker. (*Id.* ¶ 7.)

On September 13, 2012, Ms. Offdenkamp called A&T and informed them that Baker had located the information regarding Ms. Swanson's employment and would release it upon Ms. Swanson's signing of a release for that information. (*Id.* ¶ 29.) Ms. Swanson signed a release. (*Id.*) Baker then correctly provided information to A&T confirming that Ms. Swanson worked at Baker from February 2, 1990 through May 22, 1995. (*Id.*) Ms. Offdenkamp also confirmed Ms. Swanson's employment to an attorney, Rick Rosen, who sought a reference for Swanson. (*Id.* ¶ 32.) Ms. Offdenkamp sent Ms. Swanson a letter on September 24, 2012 explaining that Baker had experienced a delay in accessing her employment records, following a request for verification, because of the system in place at the time of her employment, and confirming that Baker had resolved the issues and verified Ms. Swanson's employment. (*Id.* ¶ 33.)

Ms. Swanson filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on July 23, 2012 alleging that Baker discriminated against her based on her race and retaliated against her for engaging in protected activity. (*Id.* ¶ 10.) The EEOC issued Ms. Swanson a "Right to Sue Notice" on August 2, 2012. (*Id.* ¶ 11.) Ms. Swanson filed the Complaint in this action on October 16, 2012.

## LEGAL STANDARD

"A motion under Rule 12(b)(6) tets whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff,* 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests."

4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)

(quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). Under the

federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right

to relief above the speculative level." *Twombly*, 550 U.S. at 555. Put differently, a "complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)

(quoting *Twombly*, 550 U.S. at 570). "In evaluating the sufficiency of the complaint, [courts]

view it in the light most favorable to the plaintiff, taking as true all well-pleaded factual

allegations and making all possible inferences from the allegations in the plaintiff's favor."

*AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). A plaintiff may plead himself out

of court by alleging facts showing that he has no legal claim. *See Peterson v. McGladrey &*

*Pullen, LLP*, 676 F.3d 594, 600 (7th Cir. 2012); *Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th

Cir. 2011).

Complaints filed by *pro se* plaintiffs are to be liberally construed and "held to less

stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89,

94, 127 S. Ct. 2197, 167 L. Ed .2d 1081 (2007). However, *pro se* "litigants are not exempt from

procedural rules." *Jones v. Mem. 'l Hosp. of South Bend, Inc*., 301 Fed. Appx. 548, 548 (7th Cir.

2008). And, "at some point the factual detail in a complaint may be so sketchy that the

complaint does not provide the type of notice of the claim to which the defendant is entitled

under Rule 8." *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 667 (7th

Cir. 2007).

5

## ANALYSIS

Defendants Baker and Offdenkamp argue that Ms. Swanson's complaint fails to state a claim for either retaliation or defamation. The Court addresses each cause of action in turn.

## I. Retaliation

Ms. Swanson asserts retaliation claims based on both Title VII and Section 1981, which courts analyze in the same manner. *See Pantoja v. American NTN Bearing Mfg. Corp.*, 495 F.3d 840, 848 (7th Cir. 2007). "Title VII of the Civil Rights Act of 1964 forbids retaliation against anyone who 'has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.'" *Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312, 314 (7th Cir. 2011) (quoting 42 U.S.C. § 2000e–3(a)).

Ms. Swanson may establish her retaliation claims under the direct or indirect method of proof. *See Weber v. Universities Research Ass'n, Inc.*, 621 F.3d 589, 592 (7th Cir. 2010). To prevail under the direct method, Ms. Swanson would need to establish (1) that she engaged in protected activity under Title VII; (2) that she suffered an adverse employment action; and (3) that there is a causal link between their protected activity and the adverse action. *See Brown v. Advocate South Suburban Hospital*, 700 F.3d 1101, 1106 (7th Cir. 2012). Under the indirect approach, Ms. Swanson must show: (1) that she engaged in protected activity; (2) that she was subject to an adverse employment action; (3) that she was performing her job satisfactorily; and (4) that no similarly situated employee who did not engage in protected activity suffered an adverse employment action. *See Burks v. Wis. Dept. of Transp.*, 464 F.3d 744, 759 (7th Cir. 2006). Ms. Swanson's allegations fail under either approach as she has not sufficiently alleged

any adverse employment action.  Additionally, under the direct method, Ms. Swanson's claims

fail because she cannot establish a causal link between her 1995 complaint of discrimination and

the alleged adverse action.

Although "it is well-established that a former employee . . . can assert a claim that she

was given negative references in retaliation for engaging in protected activity," Ms. Swanson has

not made any factual allegations that Baker gave her a negative reference.  *Szymanski v. Cnty. of*

*Cook*, 468 F.3d 1027, 1029 (7th Cir. 2006); *see also Robinson v. Shell Oil Co.,* 519 U.S. 337,

346, 117 S. Ct. 843, 136 L. Ed. 2d 808 (1997) (finding that Title VII protects former employees

from retaliation).  Rather, Ms. Swanson alleges that Defendants told A&T, a reference-checking

agency, that they could not find Ms. Swanson in Baker's payroll system, and that they could not

confirm or deny that she had worked at Baker.  (Compl. ¶¶ 7-9, 12; R. 22, Resp. Mem. ¶ 26.)

Not only are these statements not negative references, but they were not statements made to a

prospective employer.  Indeed, Ms. Swanson does not allege any facts regarding any negative

reference, or any statement at all, that Defendants made to any prospective employer, other than

when Baker correctly verified Ms. Swanson's dates of employment to one prospective employer.

(Resp. ¶ 14; Compl. ¶ 29.)

Ms. Swanson merely speculates, without any factual support, that Baker made statements

to prospective employers which resulted in those employers not hiring her.  The only

communication with a prospective employer Ms. Swanson alleges is Ms. Offdenkamp's

September 13, 2012 verification of Ms. Swanson's dates of employment.  (*See* Compl. ¶¶ 2, 32.)

Concluding that Swanson has alleged a claim of retaliation would, therefore, require the Court to

adopt her speculation on two issues: (1) that Defendants made *any* statements about Ms.

Swanson to any prospective employer, other than its employment verification to one prospective employer, and (2) if Defendants did make a statement to a prospective employer, that it was sufficiently negative so as to be deemed an adverse employment action.  Such speculation, unsupported by factual allegations, does not sufficiently state a claim for retaliation.  *Twombly*, 550 U.S. at 555 (finding that "factual allegations must be enough to raise a right to relief above the speculative level").

Because Ms. Swanson has not alleged any false statement made to a prospective employer, she has failed to sufficiently allege any material adverse employment action which Baker took against her.  The Seventh Circuit has held that "'adverse' in this setting has to mean, employing an objective standard, the dissemination of false reference information that a prospective employer would view as material to its hiring decision."  *Szymanski*, 468 F.3d at 1029.  Ms. Swanson has not alleged any statement that would have been material to a prospective employer's hiring decision because, at most, Ms. Swanson alleges that Defendants informed A&T that they could not find Ms. Swanson's records and so could not confirm or deny her employment history.  (Compl. ¶¶ 7-9, 12.)  Rather than providing factual allegations to support her conclusions and speculation, Swanson argues that "there *could* be circumstances where a reference given to a business that confirms references would be of significant relevance in determinating whether a reference constitutes an adverse employment action."  (Resp. Mem. ¶ 29 (emphasis added).)   A complaint, however, does not survive a motion to dismiss merely because there *could* be a set of circumstances where a cause of action might exist under a similar set of facts.  Rather, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678.   As the Seventh

8

Circuit explained in *Swanson v Citibank*, *N.A.,* "It is by now well established that a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by law." 614 F.3d 400, 403 (7th Cir. 2010). Here, "draw[ing] on its judicial experience and common sense" the Court concludes that Swanson's conclusory allegations and speculation do not establish a plausible claim of retaliation. *Iqbal*, 556 U.S. at 679. Indeed, this speculation is particularly difficult for the Court to accept when Ms. Swanson's own allegations show that Defendants made repeated efforts to locate Swanson in their system and, in fact, followed-up with A&T once they did find Ms. Swanson's seventeen year old employment record.

Furthermore, Ms. Swanson's claims fail under the direct approach as she has not pled any causal link between her 1995 complaint to the human resources department at Baker and the alleged actions by Baker of stating that they could not find Ms. Swanson in the employment database. Ms. Swanson does not even have the benefit of temporal proximity on her side, as the alleged protected activity, namely her complaint of discrimination, occurred over seventeen years before the alleged retaliation. *See, e.g., Naficy v. Ill. Dept. of Hum. Servs.*, 697 F.3d 504, 513 (7th Cir. 2012) (finding a causal link "extremely unlikely" when there was a five-year gap between the plaintiff's complaint and her layoff and that a nine-month gap "does little to raise suspicion" about the cause of plaintiff's layoff) (citing *Jajeh v. County of Cook*, 678 F.3d 560, 570 (7th Cir. 2012) (five-month gap between complaint of discrimination and adverse employment action did not amount to suspicious timing); *Leonard v. E. Ill. Univ.*, 606 F.3d 428, 432 (7th Cir. 2010) (noting that six-month lag between complaint and denial of promotion was "too long to infer a link between the two")). Ms. Swanson attempts to undercut the significance

of this nearly two-decade gap by stating,"It would have been too obvious to defame and retaliate against Swanson within a year or two after her departure," and arguing that Baker did not have an "opportunity . . . to retaliate" until she entered the job market in 2011 after her fourteen years employed at a different law firm. (Resp. Mem. ¶ 12; Compl. ¶ 40.) These arguments are unpersuasive in light of the lengthy gap in time, Baker's willingness to make efforts to locate Ms. Swanson's employment records, the fact that Baker provided Ms. Swanson with a letter of reference in 1995 to help her obtain employment, and Baker's correct verification of her employment information to A&T and a prospective employer. (Compl. ¶¶ 28, 29.) Indeed, Baker even sent Ms. Swanson a letter in September 2012 explaining that it had experienced a delay in locating her records in the old system, and stating that it had since verified her employment with all requesting parties. (*Id*. ¶ 33.)

Moreover, Swanson has not made any allegations that any of the people involved in the statements made to A&T or possibly made to a prospective employer had knowledge of her 1995 complaint. *See Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1122 (7th Cir. 2009) ("In order to establish retaliation pursuant to Title VII, the employer must have had actual knowledge of the protected activity in order for its decisions to be retaliatory."). Indeed, it is not sufficient that an employer could or should have known about an employee's complaint, instead, an employer must have actual knowledge of the employee's complaints of discrimination complaint before any of its decisions can be retaliatory. *See Hobbs v. City of Chi.*, 573 F.3d 454, 463 (7th Cir. 2009); *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 668 (7th Cir. 2006). Ms. Swanson, however, has not alleged any knowledge on behalf of the relevant actors involved in the alleged retaliation in 2012. Indeed, it is unlikely that these employees would have been aware of or

10

recalled a complaint made by a legal secretary seventeen years prior. Ms. Swanson's Complaint is simply devoid of any factual allegations linking the alleged conduct in 2012 with her complaint in 1995. At most, Ms. Swanson alleges that "[t]he fact that Defendants obliterated Swanson's existence and her social security number from their system proves a causal connection between Swanson's 1995 termination, Swanson's 1995 discrimination allegations and the Defendants' current negative reference and defamation of Swanson." (Resp. Mem. ¶ 12.) This argument, however, does not provide any factual basis for a causal link, but simply makes a conclusory statement that the Court must infer a link. Futhermore, the argument fails as Baker did not "obliterate" Ms. Swanson's existence from the system, as proven by their verification of her employment history to A&T and to a prospective employer in September 2012.

The Court, therefore, dismisses Swanson's allegations of retaliation against Ms. Offdenkamp and Baker.[1]

## II.    Defamation

In Illinois, a plaintiff claiming defamation must show that the defendant "made a false statement concerning the plaintiff, that there was an unprivileged publication of the defamatory statement to a third party by the defendant, and that the plaintiff suffered damages as a result." *Johnson v. Schnuck Markets, Inc.*, No. 11-3783, 2012 WL 5419162, at *2 (7th Cir. Nov. 7, 2012)

---

[1] Based on this finding, the Court need not address Defendants' arguments regarding Swanson's claims against Offdenkamp as an individual. Additionally, although Defendants' counsel does not represent Ms. Griffin and therefore did not move to dismiss the Complaint on behalf of Ms. Griffin, the Court cautions Swanson that the analysis contained in this opinion would apply equally to Ms. Griffin. Furthermore, the Court *sua sponte* dismisses the Complaint in its entirety, without prejudice, as to Ms. Griffin for Ms. Swanson's failure to comply with the service requirements of Rule 4(m).

(citing *Giant Screen Sports v. Canadian Imperial Bank of Commerce*, 553 F.3d 527, 532 (7th Cir. 2009)). There are two types of defamation under Illinois law – defamation *per se* and defamation *per quod*. *See Giant Screen Sports v. Canadian Imperial Bank of Commerce*, 553 F.3d 527, 532 (7th Cir. 2009). "Statements are considered defamatory *per quod* if the defamatory character of the statement is not apparent on its face, and extrinsic facts are required to explain its defamatory meaning." *Kolegas v. Heftel Broad. Corp.*, 154 Ill.2d 1, 10, 180 Ill.Dec. 307, 607 N.E.2d 201 (Ill. 1992); *see also Madison v. Frazier*, 539 F.3d 646, 653 (7th Cir. 2008). "When a defamation claim is one for defamation per quod, [ ] a plaintiff must show special damages, *i.e.*, actual damages of a pecuniary nature, to succeed." *Hukic v. Aurora Loan Serv.*, 588 F.3d 420, 438 (7th Cir. 2009). "Some statements, however, are so obviously harmful that injury to the plaintiff's reputation can be presumed and are considered actionable *per se*." *See Lott*, 556 F.3d at 568. Illinois recognizes five categories of statements that are actionable *per se*, including "those that prejudice a party, or impute lack of ability, in his or her trade, profession or business." *Giant Screen Sports*, 553 F.3d at 532.

Ms. Swanson alleges that Baker defamed her by stating, "We do not have a Gloria Swanson on file" and by claiming that Baker had no record of Ms. Swanson or her social security number as ever having worked at Baker & McKenzie. (Compl. ¶ 2.) Ms. Swanson, however, offers no non-speculative allegations that Defendants' statements that they could not locate her records in their system were false. Rather, Ms. Swanson's allegations indicate that Baker informer her that they switched to a new payroll computer system after Ms. Swanson's employment and that Baker had to retrieve her information from an older system. (Compl. ¶¶ 16, 33.) Her allegations also indicate that Defendants managed to locate her records and,

therefore, provided accurate information about her employment history at Baker to A&T and a prospective employer. (Compl. ¶¶ 29, 32, 33.)

The only allegations that Ms. Swanson makes that could indicate that Baker's statement that it could not find her in their system was false is that Defendants located other employees in their system. (*Id*. ¶ 8.) Ms. Swanson's allegations also state, however, that Defendants informed her that these employees' records were in the system because they were still "active" employees, as in still working for Baker. (*Id*. ¶ 13.) Ms. Swanson counters this by alleging that one such employee was not "active," as Defendants claimed, as he is deceased. (*Id*.) There is no allegation regarding when this employee stopped working for Baker, namely, whether it was before or after Baker switched to its current records system. Moreover, Baker's ability to find another differently-situated employee's records does not create an inference that Defendants' statements were false, particularly in light of the continued efforts Baker made to locate Ms. Swanson's records. Even taking all of Baker's allegations as true, therefore, the Court cannot infer that Baker's statements that it could not initially locate Swanson's records were false.

Ms. Swanson also alleges that Baker provided prospective employers with "slanderous information that denied Swanson was even employed by Baker." (Compl. ¶ 42.) All of the statements she cites or describes in her Complaint, however, do not support this allegation. Rather, Defendants made statements regarding their ability to locate Ms. Swanson's records, or that such records would be too old to retrieve, with Ms. Offdenkamp even specifically stating that she could not confirm or deny whether Ms. Swanson worked at Baker. (*Id*. ¶ 7-9, 12.) Ms. Swanson does not allege any statement in which the Defendants stated that Baker never employed Ms. Swanson. Even assuming, therefore, that Defendants did make these same

13

statements to prospective employers, as Ms. Swanson speculates, she has not alleged statements that would have damaged her or prejudiced her in her trade, profession or business, as required to establish defamation. The Court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

Moreover, each these alleged statements "are not actionable [because] they can be reasonably capable of an innocent construction." *Coghlan v. Beck* , No. 12-0891, 2013 WL 240421, at \*9 (Ill. App. Ct. Jan. 22, 2013) (citing *Green v. Rogers*, 234 Ill.2d 478, 491, 334 Ill. Dec. 624, 917 N.E.2d 450 (2009)). The innocent-construction rule requires the Court to consider these statements in context, and to give the "words, and any implications arising from them, their natural and obvious meaning." *Id*. In order to potentially deem the alleged statements defamatory, however, the Court would have to place meaning on the words beyond their ordinary meaning. In the context in which Defendants made these statements, they were being asked to confirm Ms. Swanson's employment. Even viewing the facts in the light most favorable to Ms. Swanson, Defendants' statements describe their ability to make such a verification, not, as Ms. Swanson would like the Court to believe, whether Ms. Swanson did in fact work at Baker at any time. (*See, e.g.,* Compl. ¶ 7 ("They do not go back that far but she is not there based on name and social security number."; Compl. ¶ 12 "I can't confirm she worked here or deny she worked here. . . it's been too long."); Compl. ¶ 30 (describing Offdenkamp as having said that "they could not confirm Ms. Swanson's employment.").) Indeed, the innocent construction of the alleged statements is far from "painting Swanson as a liar and fraud," as Ms. Swanson argues. (Compl. ¶ 34.) The alleged statements are therefore not defamatory because

14

they can be construed innocently.

Even if the Court found that Ms. Swanson had sufficiently pled a false, defamatory statement, her claim fails because Defendants did not publish the alleged statement to any third party. *See e.g, Johnson*, 2012 WL 5419162 at *3 ("Even before *Twombly and Ashcroft v. Iqbal*, we had understood notice-pleading standards to require a plaintiff alleging defamation to identify the defendant's false statements and allege their communication to a third party."); *see also Emery v. NE Ill. Reg. Commuter R.R. Corp.,* 377 Ill. App.3d 1013, 1022, 317 Ill. Dec. 10, 880 N.E.2d 1002 (Ill. App. Ct. 2007) ("In order to prove publication, plaintiff must show that allegedly slanderous remarks were communicated to someone other than plaintiff") (citing *Frank v. Kaminsky*, 109 Ill. 26, 29 (Ill. 1884)). As discussed above, Ms. Swanson does not offer any factual basis for allegations that Defendants made any false or possibly defamatory statements to potential employers. (*See, e.g.,* Compl. ¶ 34 ("Swanson will never know how many prospective employers, prior to her enlisting the assistance of the reference checking company, where Baker's retaliatory reference and lies prevented Swanson from getting the job."). Rather, Defendants made certain statements to A&T, Ms. Swanson's agent, and Ms. Swanson self-published the alleged statements to a prospective employer.[2] (Compl. ¶ 42.) Any statement Defendants made to A&T was not a statement made to a third party which might have caused Ms. Swanson any harm. Indeed, Ms. Swanson was not seeking employment from A&T or concerned about repercussions stemming from A&T learning information about her. Any

---

[2] As discussed above, Defendants also made statements to Rick Rosen, a prospective employer. According to Ms. Swanson, however, the statements made to Mr. Rosen were an accurate verification of her previous employment and are, therefore, not the allegedly defamatory statements she alleges Defendants made to A&T and other, unknown prospective employers.

statement to A&T, therefore, cannot form the basis of Ms. Swanson's defamation claim.

To circumvent the third-party publication requirement, Ms. Swanson argues that Defendants compelled her to publish the allegedly defamatory statements herself as she needed to explain to a potential employer "to straighten out the lie that Baker was telling about Swanson."[3]  (Compl. ¶ 43.)  Neither the Illinois courts nor the Seventh Circuit have recognized the tort of self-defamation, or defamation based on compelled self-publication.  *See, e.g., Emery,* 377 Ill. App.3d at 1030 (refusing to recognize the tort of compelled self-defamation); *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 910-12 (7th Cir. 1994); *see also Brown v. Chicago Transit Auth.*, 115 Fed. Appx. 865, 867 (7th Cir. 2004) (noting that "as applied to common-law defamation we have rejected the proposition that disclosures by the plaintiff may satisfy the publication element") (citing *Olivieri v. Rodriguez*, 122 F.3d 406, 408-09 (7th Cir. 1997)).  The Court will not expand the defamation doctrine here.[4]  Ms. Swanson, therefore, has not sufficiently pled a claim for defamation.

---

[3] Swanson also attempts to shift the burden to Defendants, arguing that "Defendants offer no proof that defamatory statements about Plaintiff not being in Defendants' system were not published by Defendants."  (Resp. Mem. ¶ 27.)  Swanson, however, bears the burden of offering a sufficient factual basis in her Complaint to establish her cause of action.

[4] Notably, Swanson stated that she "will not address" Defendants' arguments regarding the insufficiency of her defamation claim.  (Resp. Mem. ¶ 30.)  Based on Swanson's refusal to address Defendants' arguments regarding qualified privilege, and the mootness of these arguments based on the Court's other findings, the Court does not address these arguments here.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants Baker and Offdenkamp's motion to dismiss, and dismisses Ms. Swanson's Complaint, without prejudice.  Furthermore, as discussed above, the Court dismisses the Complaint *sue sponte* as to Defendant Griffin for Ms. Swanson's failure to comply with Rule 4(m).

Ms. Swanson may file an amended complaint on or before April 4, 2013.  Failure to file an amended complaint meeting the pleading requirements of Rule 8 by April 4th will result in dismissal of her complaint with prejudice.  The Court notes that it dismisses Ms. Swanson's Complaint here in part because of the seventeen year gap between her 1995 complaint of discrimination and the alleged retaliatory conduct, and the fact that the allegedly defamatory statements, which Ms. Swanson quoted, are not defamatory.  The Court, therefore, questions whether Ms. Swanson can meet the mandates of *Twombly* and Rule 11 in an amended complaint based on these facts.

**Date: March 14, 2013**

ENTERED

AMY J. STEVE
United States District Court Judge